FILED
97 FEB 21 PM 12:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RON GAMBILL, et al., ]
      ]
    Plaintiff(s), ]
      ]
    vs. ]  CV-95-N-3035-S
      ]
BRUNO'S, INC., et al., ]
      ]
    Defendant(s). ]

ENTERED
FEB 21 1997

**Memorandum of Opinion**

**I.   Introduction**

Ron Gambill, as father and next friend of Summer Gambill, a minor, filed this action against Bruno's, Inc., FoodMax, Inc., and Mike Ross, individually, on November 22, 1995. As originally filed, the complaint alleged violations of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the laws of the State of Alabama. The plaintiff voluntarily amended his complaint on December 8, 1995, to strike all claims brought under 42 U.S.C. § 1983. On May 7, 1996, the plaintiff added Count Twelve, a constructive discharge claim. The case is currently before the court on Motions for Summary Judgment filed by defendants Mike Ross and Bruno's, Inc. ("Bruno's"). For the reasons stated herein, the motions will be granted in part and denied in part.



## II. Undisputed Facts[1]

Bruno's is a corporation which operates a chain of retail grocery stores throughout six states. In 1994, it had a store in Alabaster, Alabama, under the format name FoodMax. Summer Gambill worked at the Alabaster FoodMax in the summer of 1994 as a cashier. Mike Ross was an assistant manager and supervisor at that store.

While Ms. Gambill worked at FoodMax, several incidents occurred involving her and Mr. Ross. Two in particular are key to resolving the motion for summary judgment. In the first incident, Summer Gambill, Mike Ross, and two other employees were standing at the rear of the store. At some point Mr. Ross began to tickle Ms. Gambill on her sides and around her stomach in a manner that embarrassed her and made her feel uncomfortable. Ms. Gambill pushed away from Mr. Ross for about a minute or two until he ceased tickling her. When he stopped, Ms. Gambill walked away.

On September 1, 1994, the second incident occurred. While Ms. Gambill and Mr. Ross were sitting across the table from each other in the break room, she told him that she was not feeling very well and asked if she could go home. Mr. Ross's response was: "[I]f you will come over here and give me some loving, I'll let you go home." Ms. Gambill then walked over to Mr. Ross, put her arm on his back, and said, "Now can I go home?" When Ms. Gambill turned to leave, Mr. Ross pulled her down onto his lap and "bounced" her up

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied, USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

2

and down. After about two minutes, when Ms. Gambill became irritated, the defendant let her go.

In addition to the above incidents, it is undisputed that on two occasions Mr. Ross brushed against the plaintiff while she was waiting on customers. One such occasion was against her back and one was on her side. The defendant however insists that this contact was inadvertent. Ms. Gambill claims that Mike Ross and Store Manager Marshall Nichols told dirty jokes in her presence in the break room on three or four occasions. She contends that Mr. Ross frequently made comments to her that "her jeans could be tighter" or "her shorts could be shorter" and that "she did not have to wear a bra if she did not want to." *Bruno's Brief* at 3. She insists that on "beach day" Mr. Ross told her that she did not have to wear anything if she did not want to." In addition, the plaintiff complains that Mr. Ross would rest his hand on her shoulder when they were in the break room together.

On September 3, 1994, Dea Martin, Jodie Selman, Michelle Belcher and Michelle Jones, met with Mr. Nichols to lodge their own complaints against Mr. Ross. The next day, Summer Gambill was suspended indefinitely by defendant Ross for improperly selling beer to a customer on Sunday. Only after her suspension, on September 5, 1994, did Ms. Gambill report Mr. Ross's conduct to Mr. Nichols.[2] On September 7, 1994, two days later, representatives from Bruno's, Inc. Human Resources Department, Bill Webster and David Holt, met with Ms. Gambill and her father regarding her claims. On September 8, 1994, Mr.

---

[2] The plaintiff contends that she reported the conduct earlier, to Faye Bunn on September 1, 1994. Ms. Bunn was going to attend the September 3 meeting Marshall Nichols had with Ms. Martin, Ms. Selman, Ms. Belcher, and Ms. Jones. The plaintiff contends she told Ms. Bunn to insure her complaints also were lodged at that meeting. In any case, Ms. Gambill's first complaint was lodged *around* September 5, 1994.

3

Nichols asked Ms. Gambill for an official statement. Personnel from Human Resources met with Mr. Ross on September 9, 1994 to discuss the situation. He was fired on September 10, for violating the company sexual harassment policy. Ms. Gambill was immediately invited to return to work, but refused.

### III.     **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers

4

to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely

5

colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   **Motion by Defendant Ross**

Defendant Mike Ross insists he is entitled to summary judgment on the plaintiff's claims for: 1) Assault and Battery; 2) False Imprisonment; 3) Intentional Infliction of Emotional Distress, and 4) Invasion of Privacy.

### A.   **Assault and Battery**

The plaintiff claims that Mr. Ross is liable for assault and battery for both the incident in the break room and the tickling incident. As to both incidents, she has presented evidence that Mr. Ross touched her in an unwelcomed and hostile manner. Mr. Ross claims that the plaintiff consented to the touchings. With this state of the evidence, a genuine issue exists as to whether the defendant touched the plaintiff in a rude or hostile

6

manner. *See Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986) (holding that a rude or hostile touching is a necessary element in an assault and battery claim).

### B.   False Imprisonment

False imprisonment is "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." *Big B. v. Cottingham*, 634 So.2d 999, 1001 (Ala. 1993) (citing Ala. Code § 6-5-170).

> For there to be a false imprisonment, there must be some direct restraint of the person; however, it is not necessary that there be confinement in a jail or a prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment.

*Big B*, 634 So. 2d at 1001. The defendant argues that "the tickling incident does not constitute false imprisonment as a matter of law because there is no evidence of any restraint. Summer Gambill was free to go at any time, and did walk away. As to the break room incident, there was no false imprisonment because Mr. Ross let her go when she requested it. Thus, there was no restraint." *Ross's brief* at 6. The defendant also contends that Ms. Gambill consented to any restraint that may have occurred. *Id.*

However, the plaintiff has presented evidence that Mr. Ross did "restrain" her during the break room incident. She testified that Mr. Ross "pulled [her] down in his lap and wouldn't let [her] up." *Gambill affidavit*. The plaintiff contends "he was bouncing me on his lap with his arms around me and wouldn't let me up. I told him to let me go and when he finally did, he grabbed me by my buttocks and pulled me back down into his lap, and held me as though he wasn't going to let me go." *Gambill affidavit*. In addition, the

7

plaintiff has testified that she repeatedly asked Mr. Ross to release her. *See Gambill deposition* at 109. Thus the plaintiff has presented evidence creating a genuine issue as to whether Mr. Ross restrained her against her will.

The plaintiff does not respond to the defendant's contention as to the tickling incident. However, it is undisputed that Mr. Ross tickled and wrestled with the plaintiff during the incident in question. The plaintiff testified in her deposition that Mr. Ross was "[j]ust trying to pick me up and tickling me, and kind of not throwing me around but kind of shuffling me around." *Gambill deposition* at 181. Although the defendant contends that "Ms. Gambill was free to go at any time, and did walk away," the defendant has the burden of establishing the absence of a genuine issue as to whether Mr. Ross restrained Ms. Gambill. This he has not done.

### C.   Tort of Outrage

To support an outrage claim, the conduct in question must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981). A determination as to whether conduct is sufficiently objectionable to support a cause of action for outrage may be made by the trial court as a matter of law. *Logan v. Sears, Roebuck & Co.*, 466 So. 2d 121, 123 (Ala. 1985).

The facts in the present case can be compared to those found in *McIssac v. WZEW-FM Corp.*, 495 So. 2d 649 (Ala. 1986). In *McIssac*, the plaintiff alleged that the president of the company where she worked asked her to have an affair with him, tried to kiss her,

8

looked at her with "illicit intent," asked her to "come to him," and asked her to visit him in another state. *McIssac*, 495 So. 2d at 650. The plaintiff in *McIssac* claimed she was fired because she refused to surrender to her employer's advances. *McIssac*, 495 So. 2d at 650-51. The Alabama Supreme Court held that the plaintiff in *McIssac* failed to state an actionable claim for outrage, because the employer's conduct did not reach the requisite level of "extreme and outrageous conduct." *McIssac*, 495 So. 2d at 651. Given that the employer's conduct in *McIssac* did not constitute an actionable claim of outrage, the court finds that the conduct in the present case, which involves conduct not as severe as that in *McIsaac*, also fails to constitute an actionable claim of outrage. Therefore, the defendants' motion for summary judgment in regard to the outrage claim will be granted, and plaintiff's outrage claim will be dismissed with prejudice.

### 2. Invasion of Privacy

The plaintiff's action for invasion of privacy is based on the alleged intrusion upon her physical solitude or seclusion. *Complaint* at 13. *See McIsaac*, 495 So. 2d at 651 (holding that an action for invasion of privacy premised on sexual harassment is known as a wrongful intrusion into one's private activities), citing *Philips v. Smalley Maintenance Services*, 435 So. 2d 705, 708 (Ala. 1983). In *McIsaac*, the Supreme Court of Alabama held that a defendant's actions had to intrude into a plaintiff's "private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac*, 496 So. 2d at 651. For example, in *Phillips v. Smalley Maintenance Services*, the supreme court found liability where the defendant, over a three-month period, repeatedly interrogated the plaintiff behind locked doors about private sexual matters. In

9

*McIsaac*, the supreme court did not find liability, stating that "'[e]ven the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability.'" *McIsaac*, 495 So. 2d at 652, quoting *Logan v. Sears, Roebuck & Co.*, 466 So. 2d 121, 124 (Ala. 1985).

It is undisputed that the plaintiff's claims of invasion of privacy are based on the break room incident, the tickling incident, Mr. Ross's alleged sexually oriented comments, two incidents where Mr. Ross "brushed up against her," and incidents in the break room where Mr. Ross allegedly placed his hand on her shoulder. Such conduct does not reach the level of intrusive and coercive behavior contemplated by the Alabama Supreme Court in *Philips* and *McIsaac*. Therefore, the defendant's motion for summary judgment on the invasion of privacy claim will be granted, and the invasion of privacy claim will be dismissed with prejudice.

## V.    **Motion by Defendant Bruno's**

Bruno's contends it is entitled to summary judgment on the plaintiff's claims under Title VII, the state law tort claims, and the negligent hiring and retention claim.

### A.    **Title VII Claims**

Count One of the complaint alleges that "[t]he conduct alleged hereinabove violates Title VII because plaintiff was required to work in a hostile environment which was tainted by impermissible sex and gender discrimination, which included her being subjected to repeated sexual harassment and intimidation over a period of time by a supervisor and co-worker, defendant, Ross." *Complaint at* 4. Count Twelve which was added by amendment alleges:

10

> Because these defendants took no action to correct such impermissible conduct prior to September 10, 1994, Summer Gambill was forced to resign her employment with these defendants. Plaintiff's working conditions were so intolerable, brought on by the sexually charged and hostile environment, that she was forced into constructive discharge which violates Title VII.

*Amended Complaint* at 1. Bruno's contends it is entitled to summary judgment on the hostile environment count because it cannot be liable for Mr. Ross's actions. If it is liable for Mr. Ross's actions, then Bruno's contends that the plaintiff can prove neither hostile work environment nor constructive discharge. In addition it asserts that the plaintiff is not entitled to punitive damages on the Title VII claims.

### 1.  Hostile Environment Claim

Courts recognize two forms of sexual harassment: quid pro quo sexual harassment and hostile work environment sexual harassment. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). The plaintiff in this case alleges only a sexually hostile work environment. Initially the court must determine whether Bruno's is liable for the alleged sexual harassment by Mr. Ross.

### a.  Liability of the Corporate Defendant

"Where . . . the plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor or co-worker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982) (footnote omitted). The employee "can show that an employer had knowledge of the harassment by proving that she complained to higher management of the problem or by demonstrating that the harassment was so pervasive that an inference of constructive

11

knowledge arises. *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir. 1988). The remedial action taken by the employer must be "reasonably likely to prevent the misconduct from recurring." *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1996)(quoting *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir. 1990). The plaintiff contends the harassment was so pervasive that Bruno's "should have known" of the hostile work environment created by Mr. Ross. In particular, the plaintiff cites complaints about him made by three employees: Leigh Ann Latham, Michelle Jones, and Cindy Coston.

Ms. Latham is 22 years old and employed at the Alabaster FoodMax. It is undisputed that in January of 1994, Mr. Ross grabbed Ms. Latham by the arm and pulled her into the store freezer. After Ms. Latham said that she wished to be released because it was cold, Mr. Ross put his arms around her and said, "I will keep you warm." Ms. Latham was eventually released and promptly reported the incident. It is undisputed that afterwards, Mr. Nichols and District Manager Don Wilson met with Mr. Ross, reviewed the company's sexual harassment policy with him, and informed him that he would be terminated if he ever violated the company policy again.

Michelle Jones is 23 years old and has been working at Bruno's since July 1, 1989. It is undisputed that Mr. Ross said things to her like "why don't we go fool around," or "lets go for a ride." Ms. Jones also testified that Mr. Ross tried to pull up her skirt on at least one occasion. It is undisputed that on several occasions prior to September of 1994, Ms. Jones complained about Mr. Ross's conduct to Charley Sessions and Allen Rayburn, the assistant manager and co-manager at the Alabaster FoodMax.

12

Cindy Coston is 28 years old and has worked for Bruno's for over 8 years. Ms. Coston heard Mr. Ross make comments of a sexual nature about women in Bruno's. She contends that she reported this behavior to Mr. Rayburn seven times and Mr. Nichols three times. However, Bruno's disputes these reports were made.

Based on this evidence, a reasonable jury could find that Bruno's had *actual* knowledge of the hostile work environment allegedly created by Mr. Ross. At the very least, there is enough evidence to create a genuine issue as to whether the conduct was so pervasive that Bruno's "should have known" of the harassment in question. The defendant does argue that it adequately responded to Mr. Latham's complaint by warning Mr. Ross that he would be terminated for future violations of the company sexual harassment policy. However, there is no evidence in the record that Bruno's took any action with regard to the alleged complaints of Ms. Coston and Ms. Jones. Even if the company did take action with regard to these complaints, the number of occurrences of alleged harassment is enough to permit a reasonable jury to infer that measures taken by Bruno's were insufficient. Accordingly, Bruno's is not entitled to judgment as a matter of law on the issue of its responsibility for Mr. Ross's conduct.

### b.     The Existence of a Hostile Work Environment

The defendant next contends that "the plaintiff has not presented sufficient evidence to support a claim of a hostile work environment." The elements of a claim under Title VII for a hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a "term, condition, or

13

privilege" of employment. *See Henson v. City of Dundee*, 682 F.2d 897, 903-904 (11th Cir. 1982). The plaintiff has presented evidence that Mr. Ross, the plaintiff's supervisor, engaged in sexually oriented joking with employees in and around Ms. Gambill, made sexually suggestive requests of her, and commented in a sexual manner about her apparel. Therefore there is evidence that could lead a reasonable jury to the conclude that Mr. Ross created a hostile working environment. Accordingly, Bruno's is not entitled to judgment as a matter of law on the hostile work environment claim.

### B.     Liability of Bruno's for Constructive Discharge

The plaintiff is unable to establish a prima facie case of constructive discharge. The standard for determining whether an employee has been constructively discharged is:

> The general rule is that if the employer deliberately makes an employee's working condition so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is liable for any illegal conduct involved therein as if it has formally discharged the aggrieved employee.

*Young v. Southwestern Savings & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975). Clarifying this standard, the Eleventh Circuit has said, "[t]o find constructive discharge we believe the trier of fact must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987)(citing *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980)). "Part of the employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." *Id.* Thus, an employee should take steps short of resignation that a reasonable person would have taken to make [his] working conditions

more tolerable, including making a formal complaint to upper management. *Woodward v. City of Worland*, 977 F.2d 1392, 1401-02 (11th Cir. 1992).

The Eleventh Circuit held in *Woodward v. City of Worland* that before resigning, a reasonable victim of harassment would complain of the situation to upper management, and if the situation is not remedied, file a complaint with the EEOC. *Id*. at 1401-02. Because the plaintiff in *Woodward* did not do so, the court held that she had failed to establish a genuine question of fact as to whether there was no reasonable alternative to resignation. *Id*. It is undisputed that Ms. Gambill did not report Mr. Ross's actions to management until just before Mr. Ross placed her on indefinite suspension. After Mr. Ross was fired, Ms. Gambill chose voluntarily not to return to the store. She could only have been "constructively" discharged if she left the job voluntarily because of some "intolerable" situation. Ms. Gambill left the store originally because she was put on indefinite suspension. After Mr. Ross was fired, Ms. Gambill still refused to return. Therefore, Ms. Gambill left Bruno's after the problem had been eliminated. Accordingly, there was no constructive discharge and summary judgment is due to be granted.

### C. Punitive Damages

In order to obtain punitive damages in a Title VII disparate treatment case, the complaining party must prove that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a (b)(1). Malice is defined as "with intent to harm," and recklessness is "serious disregard for the consequences of [one's] actions." 97 F.3d at 491. Bruno's contends that its actions were not taken recklessly, but

15

instead that it made a reasoned decision to apply its sexual harassment policy. The plaintiff has cited no evidence that Bruno's acted with intent to harm or serious disregard for the consequences of its actions. Accordingly, no reasonable jury could find in her favor on the issue of punitive damages.

### D. Liability of Bruno's Under Alabama Tort Law

The complaint alleges that Bruno's is liable for false imprisonment, assault and battery, invasion of privacy, and outrage. "Under Alabama case law, an employer is liable for the torts of an employee (1) if the employee was acting within the line and scope of his employment or (2) if the employer ratified, confirmed, or adopted the unauthorized wrongful conduct of the employee." *Sparks v. Regional Medical Center Board*, 792 F. Supp. 735, 748 (N.D. Ala. 1992) (citing *Moman v. Gregerson's Foods, Inc.* 570 So. 2d 1215, 1216 (Ala. 1990). Employee conduct that is "impelled by motives that are wholly personal," or done "to gratify his own feelings or resentment," is not within the scope of employment. *Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990). Sexual conduct by an employee is outside the scope of employment. *See Doe,* 570 So. 2d 1211. Accordingly, Ross was not acting within the line and scope of his employment with Bruno's when he allegedly committed the acts complained of. Neither did Bruno's ratify Mr. Ross's conduct. Accordingly, Bruno's is entitled to judgment as a matter of law on Ms. Gambill's claims for false imprisonment, assault and battery, invasion of privacy, and outrage.

### E. Negligent Hiring and Retention

In Count Ten of the complaint, the plaintiff alleges that

> The defendants, Bruno's and FoodMax, had notice or knowledge of the incompetency of the defendant, Ross, as an employee. Said incompetence of the defendant, Ross, was actually known to the defendants, Bruno's and FoodMax, or was discoverable by the defendants if care and proper diligence had been exercised. The defendants had notice or knowledge of the propensities of the defendant, Ross, for violating company policies and/or his propensities for acting in the manner complained of.
>
> * * *
>
> As a proximate result of the negligent supervision or retention of the defendant, Ross, by the defendants, Bruno's and FoodMax, the plaintiff, Summer Gambill, suffered emotional distress, mental anguish, embarrassment, humiliation and trauma, for which she claims compensatory and punitive damages herein.

*Complaint* at 16. The defendant insists that because "the plaintiff has submitted no evidence in support of a negligent hiring claim, summary judgment is due to be granted." *Bruno's brief* at 18. "The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised." *Ledbetter v. United American Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993). Indeed, the plaintiff has presented no evidence that the defendant had any knowledge either of Mr. Ross's tendencies towards sexual harassment or any history of sexual harassment before he was hired. Bruno's, on the other hand submitted evidence that it ran a credit check and checked Mr. Ross's references before he was employed. Thus there exists no genuine issue of material fact that the defendant was not negligent in hiring Mr. Ross. Accordingly, on the negligent hiring claim, Bruno's is entitled to judgment as a matter of law.

As to the retention claim, the plaintiff has presented evidence that despite numerous complaints to Bruno's management, Mr. Ross was retained. Thus, a reasonable jury could find that Bruno's failed to exercise ordinary care in retaining Mr. Ross, which led to Ms.

Gambill's injuries. Accordingly, the motion will be denied as to the plaintiff's negligent retention claim.

## VI. Conclusion

Based on the foregoing opinion, the motion for summary judgment filed by Mike Ross will be **GRANTED** as to the plaintiff's outrage and invasion of privacy counts. In all other respects it will be **DENIED**. The motion for summary judgment filed by Bruno's will be **GRANTED** as to the plaintiff's constructive discharge claim; claim for punitive damages under Title VII; Alabama tort law claims for false imprisonment, assault and battery, invasion of privacy, and outrage; and claim for negligent hiring. Bruno's motion will otherwise be **DENIED**.

Done, this 21st of February, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE